THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRENDAN MOORE, MATTHEW DeVITO, on behalf of themselves, and others similarly situated,<br><br>     Plaintiffs,<br><br>    v.<br><br>EXPERIAN NORTH AMERICA, INC. and T-MOBILE,<br>     Defendants. | Case No.:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs BRENDAN MOORE and MATTHEW DeVITO ("Plaintiffs"), by and through their attorneys, allege personal knowledge as to all facts related to themselves and on information and belief as to all other matters, which are based upon, among other things, the investigation made by Plaintiffs through their counsel, and allege as follows:

## PRELIMINARY STATEMENT

1. This is a class action lawsuit brought by, and on behalf of, a nationwide class of individuals whose personal information, data provided to the mobile service provider T-MOBILE was compromised by EXPERIAN NORTH AMERICA, INC.

2. T-MOBILE, which primarily provides cellular phone services to consumers, processes the credit applications of customers and potential customers through EXPERIAN NORTH AMERICA, INC., an information services group which provides, among other things, credit check services to corporations.

1

3. EXPERIAN NORTH AMERICA, INC. and T-MOBILE failed to protect the sensitive data of T-MOBILE's customers and individuals who applied for credit with T-MOBILE.

4. On October 1, 2015, EXPERIAN NORTH AMERICA, INC. disclosed that 15 million T-MOBILE customers and individuals who had applied for credit with T-MOBILE had had their sensitive data compromised in a massive hack on EXPERIAN NORTH AMERICA, INC.'s servers. The hack affected 15 million persons who had applied for credit with T-MOBILE between September 1, 2013 and September 16, 2015.

5. Plaintiffs are customers harmed by T-MOBILE's and EXPERIAN NORTH AMERICA, INC.'s substandard security practices. Plaintiffs seek to represent themselves as well as a Class of all other customers similarly situated who applied for credit with T-MOBILE between September 1, 2013 and September 16, 2015.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for deprivation of rights guaranteed under the United States Constitution. Jurisdiction is also founded upon 28 U.S.C. § 1332(d) (Class Action Fairness Act) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and the requisite diversity of citizenship.

7. Venue is appropriate pursuant to 28 U.S.C. § 1391. A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District. Additionally, Defendant EXPERIAN NORTH AMERICA, INC. resides here as it maintains its principle office and headquarters in this District.

8. This court has personal jurisdiction over EXPERIAN NORTH AMERICA, INC. because its principle office is located in Schaumburg, Illinois.

## PARTIES

9. Plaintiff BRENDAN MOORE ("Moore") is a citizen and resident of Mill Valley, California. On or about October, 2014, Plaintiff purchased a cellular phone from T-MOBILE, and in doing so was subjected to a credit check by EXPERIAN NORTH AMERICA, INC.

10. Plaintiff MATTHEW DeVITO ("DeVITO") is a citizen and resident of Palos Heights, Illinois. On or about July, 2014, Plaintiff purchased a cellular phone from T-MOBILE, and in doing so was subjected to a credit check by EXPERIAN NORTH AMERICA, INC..

11. Defendant EXPERIAN NORTH AMERICA, INC. ("Experian") is a Delaware corporation with its principle place of business located at 955 American Lane, Schaumberg, Illinois 60173.

12. Defendant T-MOBILE ("T-Mobile") is a Delaware corporation with its principle place of business located at 12920 SE 38th Street, Bellevue, Washington 98006.

## STATEMENT OF COMMON FACTS

13. On or about October 1, 2015, T-Mobile was notified by Experian, the vendor that processes its credit applications, that they had experienced a data breach.

14. Experian maintains a historical record of the applicant data used by T-Mobile to make credit decisions. The data provides the record of the applicant's credit application with T-Mobile and is used to assist with credit decisions and respond to questions from applicants about the decision on their credit application. The data is required to be maintained for a minimum period of 25 months under credit laws.

15. The hacker acquired the records of approximately 15 million people, including new applicants requiring a credit check for service or device financing from September 1, 2013, through September 16, 2015.

16. These records include information such as name, address and birthdate, as well as encrypted fields with Social Security number and ID number (such as driver's license or passport number), and additional information used in T-Mobile's own credit assessment. Experian has determined that this encryption may have been compromised.

17. This is not the first time data maintained by Experian has been breached. An attack on an Experian subsidiary that began before Experian purchased it in 2012 exposed the Social Security numbers of 200 million Americans.

18. Plaintiffs have already experienced suspicious activity related to the compromised data. For example, fraudulent transactions and/or fraudulent home loan applications have already begun to appear on Plaintiffs' and class members' credit reports.

19. As a direct and proximate result of Defendants' actions and omissions in disclosing and failing to protect Plaintiffs' private personal information, Plaintiffs and those similarly situated have been placed at a substantial risk of harm in the form of identity theft and have incurred and will incur actual damages in an attempt to prevent identity theft.

## **CLASS ALLEGATIONS**

20. Plaintiffs bring this complaint on behalf of themselves and the following class: All persons in the United States who between September 1, 2013, and September 16, 2015 applied for credit with T-Mobile.

4

21. The members of the putative class, estimated at 15 million, are so numerous that joinder of individual claims is impracticable. Members of the class can be readily identified through Experian's and T-Mobile's records.

22. There are significant questions of fact and law common to the members of the class. These issues include:

    a. Whether Experian and T-Mobile failed to establish appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

    b. Whether the security provided by Experian and T-Mobile was satisfactory to protect customer information as compared to industry standards;

    c. Whether Experian misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

    d. Whether Experian and T-Mobile's conduct was intentional, willful or negligent;

    e. Whether Experian and T-Mobile violated any and all statutes and/or common law listed herein;

    f. Whether the putative class suffered damages as a result of Experian and T-Mobile's conduct or omissions; and

    g. Whether class members are entitled to injunctive, declarative and monetary relief as a result of Experian and T-Mobile's conduct.

23. Plaintiffs' claims are typical of the claims of the putative class. Plaintiffs and all members of the putative class have been adversely affected and damaged in that Experian and T-

5

Mobile failed to adequately protect their private information to the detriment of Plaintiffs and the putative class.

24.     The proposed class representatives will fairly and adequately represent the putative class because they have the class members' interest in mind, their individual claims are co-extensive with those of the class, and because they are represented by qualified counsel experienced in class action litigation of this nature.

25.     A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative class is impracticable. Many members of the class are without the financial resources necessary to pursue this matter. Even if some members of the class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Experian and T-Mobile's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale and comprehensive supervision over the entire controversy by a single judge in a single court.

26.     The putative class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Experian and T-Mobile have acted on grounds generally applicable to the putative class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the class.

27.     The putative class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to class members will predominate over questions affecting individual members, and a class action is superior to other methods for

fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## COUNT I
### *Breach of Contract*
**(versus T-Mobile)**

28. Plaintiffs repeat and reaffirm the assertions of fact contained in the foregoing paragraphs as though fully set forth herein.

29. Plaintiffs and class members entered into respective contracts when purchasing cellular services from T-Mobile.

30. T-Mobile would require consent to its Terms of Service before selling its product or service.

31. Within these contracts, T-Mobile represented that it used industry-leading security practices to protect Plaintiffs' and other class member's private personal information.

32. Plaintiffs were not informed that industry-leading practices were not used to protect their private personal information.

33. Through its use of insufficient security practices for the protection of Plaintiffs' confidential information, T-Mobil breached its contract with Plaintiffs to protect their personal confidential information.

## COUNT II
### *Negligence*

34. Plaintiffs repeat and reaffirm the assertions of fact contained in the foregoing paragraphs as though fully set forth herein.

35. Experian and T-Mobile owed a duty to Plaintiffs and all class members to use security practices that would protect their confidential information provided to Experian and T-Mobile against the very sort of attack that occurred here.

36. Experian and T-Mobile breached the aforementioned duty when each failed to use security practices that would protect the confidential information provided to it by consumers.

37. As a direct and proximate cause of failing to use appropriate security practices, Experian's system was hacked causing Plaintiffs' and all class members' private personal information to be disseminated to unauthorized individuals.

38. The breach of the security system caused direct and substantial damages to Plaintiffs and class members, as well as the possibility of future harm through the dissemination of private information and possibility of identity theft.

39. By engaging in the forgoing acts and omissions, Experian and T-Mobile committed the common law tort of negligence.

## COUNT III
### *WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT*
### *(15 U.S.C. § 1681, et seq.)*
### **(versus Experian)**

40. Plaintiffs repeat and reaffirm the assertions of fact contained in the foregoing paragraphs as though fully set forth herein.

41. Pursuant to 15 U.S.C. § 1681a(f), a "consumer reporting agency" includes any person which, for monetary fees or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing "consumer reports" to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

8

42. Pursuant to 15 U.S.C. § 1681a(d)(1), a "consumer report" is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used, expected to be used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U.S.C. § 1681b.

43. "Consumer credit information" includes, *inter alia*, a person's name, identification number (*e.g.*, Social Security number), marital status, physical address and contact information, educational background, employment, professional or business history, financial accounts and financial account history (*i.e.*, details of the management of the accounts), credit report inquiries (*i.e.*, whenever consumer credit information is requested from a credit reporting agency), judgments, administration orders, defaults, and other notices.

44. FCRA limits the dissemination of "consumer credit information" to certain well-defined circumstances and no other. 15 U.S.C. § 1681b(a).

45. At all relevant times, Experian was (and continues to be) a consumer reporting agency under FCRA because on a cooperative nonprofit basis and for monetary fees, it regularly (i) received, assembled and/or evaluated Plaintiffs' and class members' "consumer credit information" protected by FCRA for the purpose of furnishing consumer reports to third parties, and (ii) used the means and facilities of interstate commerce to prepare, furnish and transmit consumer reports containing Plaintiffs' and class members' consumer credit information to third parties (and continues to do so).

46. As a consumer reporting agency, Defendant was (and continues to be) required to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard, protect and limit the dissemination of consumer credit information in its possession, custody and control, including Plaintiffs' and class members' consumer credit information, only for permissible purposes under FCRA. *See* 15 U.S.C. § 1681(b).

47. By its above-described wrongful actions, inaction and omissions, want of ordinary care, and the resulting security breach, Defendant willfully and recklessly violated 15 U.S.C. § 1681(b), 15 U.S.C. § 1681a(d)(3), 15 U.S.C. § 1681b(a);(g), and 15 U.S.C. § 1681c(a)(6) (and the related applicable regulations) by failing to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and class members' consumer credit information.

48. Defendant's above-described wrongful actions, inaction and omissions, and want of ordinary care, in turn, directly and proximately caused the security breach which, in turn, directly and proximately resulted in the wrongful dissemination of Plaintiffs' and class members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's above described willful and reckless FCRA violations also have prevented it from timely and immediately notifying Plaintiffs and class members about the security breach which, in turn, inflicted additional economic damages and other actual injury and harm on Plaintiffs and class members.

49. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care, and the resulting security breach, directly and proximately caused Plaintiffs and class members to suffer economic damages and other actual injury and harm, and collectively

10

constitute the willful and reckless violation of FCRA. Had Defendant not engaged in such wrongful actions, inaction, omissions, and want of ordinary care, Plaintiffs' and class members' consumer credit information would not have been disseminated to the world for no permissible purpose under FCRA, and used to commit identity fraud. Plaintiffs and class members, therefore, are entitled to declaratory relief (as set forth below), injunctive relief (as set forth below), and compensation for their economic damages, and other actual injury and harm in the form of, *inter alia,* (i) the lost intrinsic value of their privacy, (ii) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (iii) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (iv) statutory damages of not less than $100, and not more than $1000, each, under 15 U.S.C. § 1681n(a)(1).

50.     Plaintiffs and class members also are entitled to recover punitive damages, under 15 U.S.C. § 1681n(a)(2), and their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681n(a)(3).

**<u>COUNT IV</u>**
***NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING* ACT**
**(15 U.S.C. § 1681, et seq.)**
**(versus Experian)**

51.     Plaintiffs repeat and reaffirm the assertions of fact contained in the foregoing paragraphs as though fully set forth herein.

52.     In the alternative, by their above-described wrongful actions, inaction and omissions, want of ordinary care, and the resulting security breach Defendant negligently or in a grossly negligent manner violated 15 U.S.C. § 1681(b), 15 U.S.C. § 1681a(d)(3), 15 U.S.C. § 1681b(a);(g), and15 U.S.C. § 1681c(a)(6) (and the related applicable regulations) by failing to identify, implement, maintain and monitor the proper data security measures, policies,

procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and class members' consumer credit information.

54. Defendant's above-described wrongful actions, inaction and omissions, and want of ordinary care, in turn, directly and/or proximately caused the security breach which, in turn, directly and proximately resulted in the wrongful dissemination of Plaintiffs' and class members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's above-described willful and reckless FCRA violations also have prevented it from timely and immediately notifying Plaintiffs and class members about the security breach which, in turn, inflicted additional economic damages and other actual injury and harm on Plaintiffs and class members.

54. It was reasonably foreseeable to Defendant that its failure to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and class members' consumer credit information would result in a security lapse, whereby unauthorized third parties would gain access to, and disseminate, Plaintiffs' and class members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care, and the resulting security breach, directly and proximately caused Plaintiffs and class members to suffer economic damages and other actual injury and harm, and collectively constitute the negligent violation of FCRA. Had Defendant not engaged in such wrongful actions, inaction, omissions, and want of ordinary care, Plaintiffs' and class members' consumer credit information would not have been disseminated to the world for no permissible purpose under FCRA, and used to commit identity fraud. Plaintiffs and class members, therefore, are entitled to declaratory relief (as set forth

below), injunctive relief (as set forth below), and compensation for their economic damages, and other actual injury and harm in the form of, *inter alia,* (i) the lost intrinsic value of their privacy, (ii) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, and (iii) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

55. Plaintiffs and class members also are entitled to recover their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681o(a)(2).

## COUNT V
### *DECLARATORY RELIEF*
**(versus Experian)**

56. Pursuant to the Declaratory Judgment Act, Plaintiffs and class members request the Court to enter a judgment declaring, *inter alia*, (i) Defendant owed (and continues to owe) a legal duty to safeguard and protect Plaintiffs' and class members' confidential and sensitive consumer credit information, and timely notify them about any security breach, (ii) Defendant breached (and continues to breach) such legal duties by failing to safeguard and protect Plaintiffs' and class members' confidential and sensitive payment consumer credit information, and (iii) Defendant's breach of its legal duties directly and proximately caused the security breach, and the resulting damages, injury, and harm suffered by Plaintiffs and class members.

## COUNT VI
### *INJUNCTIVE RELIEF*
**(versus Experian)**

57. Defendant Experian's above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach have caused (and will continues to cause) Plaintiffs and class members to suffer irreparable harm in the form of, *inter alia*, economic damages and other injury and actual harm in the form of, *inter alia,* (i) actual

identity theft and identity fraud, (ii) invasion of privacy, (iii) loss of the intrinsic value of their privacy, (iv) breach of the confidentiality of their consumer reports and consumer credit information, (v) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (vii) the imminent, immediate, and continuing increased risk of ongoing identity theft and identity fraud. Such irreparable harm will not cease unless and until enjoined by this Court.

58.   Plaintiffs and class members, therefore, are entitled to injunctive relief and other appropriate affirmative relief including, *inter alia*, an order compelling Defendant Experian to, *inter alia*, (i) notify each person whose consumer credit information was exposed in the security breach, (ii) provide credit monitoring to each such person for at least six years, (iii) establish a fund (in an amount to be determined) to which such persons may apply for reimbursement of the time and out-of-pocket expenses they incurred to remediate identity theft and/or identity fraud (*i.e.*, data breach insurance), from September 16, 2015, forward to the date the above-referenced credit monitoring terminates, and (iv) discontinue its above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach.

59.   Plaintiffs and class members also are entitled to injunctive relief requiring Defendant Experian to implement and maintain data security measures, policies, procedures, controls, protocols, and software and hardware systems, including, *inter alia*, (i) engaging third-party security auditors/penetration testers and internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's computer systems on a periodic basis, (ii) engaging third-party security auditors and internal personnel to run automated security monitoring, (iii) auditing, testing, and training its security personnel regarding any new

14

or modified procedures, (iv) conducting regular database scanning and security checks, (v) regularly evaluating web applications for vulnerabilities to prevent web application threats, and (vi) periodically conducting internal training and education to inform internal data security personnel how to identify and contain data security lapses.

60. If an injunction is not issued, Plaintiffs and class members will suffer irreparable injury in the event Defendant Experian commits another security lapse, the risk of which is real, immediate, and substantial.

61. The hardship to Plaintiffs and class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant Experian suffers another massive security lapse, Plaintiffs and class members will likely again incur millions of dollars in damages. On the other hand, and setting aside the fact that Defendant has a pre-existing legal obligation to employ adequate customer data security measures, Defendant Experian's cost to comply with the above-described injunction they are already required to implement is relatively minimal.

62. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another security lapse, thereby eliminating the damages, injury, and harm that would be suffered by Plaintiffs, class members, and the millions of consumers whose confidential and sensitive consumer credit information would be compromised.

### PRAYER FOR RELIEF

WHERFORE, Plaintiffs, for themselves and class members, respectfully request that (i) (i) this action be certified as a class action, (ii) Plaintiffs be designated the Class Representatives, and (iii) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, for themselves and class

members, further request that upon final trial or hearing, judgment be awarded against Defendant, in Plaintiffs' favor for:

    (i) statutory and actual damages under the Fair Credit Reporting Act in an amount to be determined by the trier of fact;

    (ii) punitive damages in an amount to be determined by the trier of fact;

    (iii) declaratory and injunctive relief (as set forth above);

    (iv) attorneys' fees, litigation expenses and costs of suit incurred through the trial and any appeals of this case; and

    (v) such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of class members, respectfully demand a trial by jury on all of their claims and causes of action so triable.

Dated: October 2, 2015          By:    <u>Edward A. Wallace</u>
                                                     Edward A. Wallace
                                                     Mark R. Miller
                                                     Amy E. Keller
                                                     WEXLER WALLACE LLP
                                                     55 West Monroe Street, Suite 3300
                                                     Chicago, IL 60603
                                                     (312) 346-2222

                                                     Gary E. Mason
                                                     Esfand Y. Nafisi
                                                     Benjamin Branda
                                                     WHITFIELD BRYSON & MASON LLP
                                                     1625 Massachusetts Avenue, NW, Ste. 605
                                                     Washington, DC 20036
                                                     (202) 429-2290

                                                     Gregory F. Coleman
                                                     Mark E. Silvey
                                                     GREG COLEMAN LAW PC
                                                     First Tennessee Plaza
                                                     800 S. Gay Street, Suite 1100

            Knoxville, TN 37929
            (865) 247-0090

            *Attorneys for Plaintiffs*

Case: 1:15-cv-08771 Document #: 1 Filed: 10/02/15 Page 17 of 17 PageID #:17